(C. D. 390)

S. A. Haram v. United States

United States Customs Court, First Division

(Decided October 31, 1940)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General (*John J. McDermott,* special attorney), for the defendant.

Before Brown and Walker, Judges

Brown, Judge: This suit against the United States was brought at New York to recover customs duties claimed to have been illegally exacted on certain herring imported from Norway.

The collector took duty thereon at $1\frac{1}{4}$ cents per pound under paragraph 720 (a) (2), Tariff Act of 1930.

Paragraph 720 reads:

(a) Fish, smoked or kippered (except fish packed in oil or in oil and other substances and except fish packed in air-tight containers weighing with their contents not more than fifteen pounds each):

(1) Salmon, 25 per centum ad valorem;

(2) herring, whole or beheaded, but not further advanced, $1\frac{1}{4}$ cents per pound;

(3) herring, eviscerated, split, skinned, boned, or divided into portions, 3 cents per pound;

(4) cod, haddock, hake, pollock, and cusk, whole, or beheaded or eviscerated or both, but not further advanced (except that the vertebral column may be removed), $2\frac{1}{2}$ cents per pound;

(5) cod, haddock, hake, pollock, and cusk, filleted, skinned, boned, sliced, or divided into portions, 3 cents per pound;

(6) other fish, 25 per centum ad valorem.

(b) Fish, prepared or preserved, not specially provided for, in immediate containers weighing with their contents not more than fifteen pounds each, 25 per centum ad valorem; in bulk or in immediate containers, weighing with their contents more than fifteen pounds each, $1\frac{1}{4}$ cents per pound net weight.

(c) The term "fish", as used in this Act, does not include shellfish.

The plaintiff claims the merchandise is properly dutiable at only $\frac{5}{8}$ of a cent per pound under the paper referred to as the Canadian

Trade Agreement of January 1, 1936, published as T. D. 48033, 68 Treas. Dec. 794, etc.

The entire portion of that trade agreement relating to an amendment or change in paragraph 720 (a) reads as follows:

| Tariff Act of 1930 paragraph | Description of article | Rate of duty |
|---|---|---|
| 720 (a)........ | Smoked herring (except herring packed in oil or in oil and other substances and except herring packed in air-tight containers weighing with their contents not more than 15 pounds each):<br>Hard dry-smoked, when whole or beheaded, but not further advanced..<br>Boned, whether or not skinned........................................ | ⅝¢ per lb.<br>1½¢ per lb. |

The evidence of two wholesale tradesmen of considerable experience was introduced by the plaintiff.

One of them, the plaintiff, who had been an importer of fish since 1920, testified that he had handled various kinds of fish including hard dry-smoked herring and identified the representative sample introduced in evidence as being that article. He had been at the Norwegian factory in former years and described the process as follows:

They take a salted herring, a herring that has been caught in the fresh shape, place it in barrels and salt it.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The herring is hung up in a room which they call a drying room, where they use mechanical blowers, to blow air through it to dry it. After it has been through the dryer they place it in a smoke oven, in a smoke room, where smoke is applied, and it is left there until properly smoked, and then is packed in boxes. The drying and smoking both act to take out the moisture.

In explaining why he described the merchandise in controversy as hard dry-smoked herring he stated—

A hard dry-smoked herring　\*　\*　\*　can be determined by how much drying and smoking it has been given. These herrings I presented show evidence of being hard dry-smoked, both by the dryness and by the color. The feel of the herring shows the dryness. The color shows the amount of smoke. The herring are originally silvery in color. These are golden color, which can be only created by a lot of smoke, not a little.

He said these fish were sometimes described as bloaters.

The other tradesman, who also identified the article at issue as hard dry-smoked herring, had been in the business of importing fish for 23 years and had handled hard dry-smoked herring for 5 or 6 years but had not imported it for the previous years.

He described the article in similar terms to the previous witness and testified that you could not smoke or dry a herring into a harder article than these.

The examiner made his advisory return on these fish as soft-dried smoked herring as compared with other dryer and harder and flaky reddish brown herrings which he considered hard.

After carefully weighing this evidence, we find as a fact that the importation is hard dry-smoked herring within that term as used in the Canadian Trade Agreement.

Judgment will, therefore, issue sustaining the protest for classification at ⅜ of a cent a pound and directing the collector of customs to refund the excess duties taken.